## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | |
| | ) | Case No. 17 C 00886 |
| THEODORE A. HEOTIS, | ) | Consolidated with 17 C 00889 |
| Bankr. Case No. 16-28071, | ) | and 17 C 00893 |
| _____ | ) | |
| | ) | On appeal from the United States |
| ___ | ) | Bankruptcy Court |
| THEODORE A. HEOTIS, | ) | Case No. 16-28071 |
| | ) | Adv. No. 16 A 00567 |
| Appellant, | ) | |
| | ) | |
| v. | ) | Judge Virginia M. Kendall |
| | ) | |
| CITY OF AURORA, | ) | |
| | ) | |
| Appellee. | | |

### MEMORANDUM OPINION AND ORDER

Currently before the Court are three consolidated appeals from the United States

Bankruptcy Court for the Northern District of Illinois, Eastern Division, Nos. 16 B 28071 and 16

A 00567.  Specifically, Appellant Theodore Heotis appeals from the following orders entered by

the Bankruptcy Court:  (1) a January 18, 2017 Order and a January 19, 2017 Corrected Order

granting in part and continuing in part the City of Aurora (the "City")'s motion for relief from

the automatic stay in the Chapter 13 proceeding (ROA Dkt. 13-6) at 18–19,[1] and (2) a January

---

[1] Citations to documents filed in this case, No. 17 C 886, are to the docket entry number, in parentheses, followed by any applicable page reference, such as "(Dkt. 25) at 7," except that citations to the Amended Record on Appeal (Dkts. 13-1 through 13-8) are cited as "ROA" followed by their docket entry number and exact page location, such as "(ROA Dkt. 13-2) at 37–45."  Finally, citations to the underlying Bankruptcy Court documents, if any, will identify the case number, docket number, and page reference, such as "(No. 16 B 28071, Dkt. 69) at 2."

With regard to the January 18 and January 19 orders appealed, an order granting in part and continuing in part the motion for relief from stay dated *December* 17, 2017 was entered on January 18, 2018.  *See* (ROA Dkt. 13-6) at 18.  A corrected order dated January 17, 2017, but which was otherwise identical to

18, 2017 Order granting in part and denying in part the City's motion to dismiss the Adversary Complaint (two appeals were filed regarding this Order). (ROA Dkt. 13-7) at 28. Heotis moved for a stay pending appeal before this Court (Dkt. 10), and on September 28, 2017, the Court denied Heotis's motion. (Dkt. 40). For the reasons set forth below, the challenged Orders of the Bankruptcy Court are **AFFIRMED**.

## BACKGROUND

### A.    The Liens on Heotis' Property

Heotis operates a used car lot at 512 Broadway in Aurora, Illinois (the "Property"), a parcel of land that he owns. (Dkt. 34-1) at A4. On November 26, 2002, the City issued a special use permit pursuant to Ordinance 02-121 ("Special Use Ordinance") in order to allow Heotis to conduct his used auto sales business on the Property, which is located in a residential area. (ROA Dkt. 13-3) at 43–50. Through the Special Use Ordinance, the City placed thirteen conditions on the Property's usage, mostly aimed at improving its appearance, remediating any environmental issues, and prohibiting the use of the Property as a salvage yard. *Id*. at 45. The Aurora City Council later found that Heotis failed to comply with six of the thirteen of the conditions, in particular, by failing to remove buried tires and other soil contaminants from the Property and to make certain other improvements to the site. (ROA Dkt. 13-3) at 51–53. Accordingly, in a new ordinance, Ordinance 07-28 dated March 13, 2007, the City rescinded the Special Use Ordinance and vacated the corresponding permit. *Id*. at 51–52.

The City then commenced a variety of measures to clean up the environmental contamination of the Property, including removing thousands of tons of salvage debris, installing fencing, transporting an 8,000-gallon storage tank, and treating and removing non-hazardous

---

the original order, was entered on January 19, 2017. *See id*. at 19. Heotis's Notice of Appeal identifies both orders as the subject of the appeal. *See* (Dkt. 1) at 2, 5–6.

wastewater. (ROA Dkt. 13-2) at 38. The City alleges that Heotis was using the property for illegal waste transfer and as a salvage yard. These measures cost the City over $900,000.[2] As a result, the City recorded two liens on the Property for cleanup and related costs or "nuisance abatement": the first, for $899,713.74, was recorded on October 15, 2007; the second, for $19,217.38, was recorded on February 19, 2008. (ROA Dkt. 13-2) at 64–65.

**B.      The City's Foreclosure Action in State Court**

On January 21, 2011, the City sued Heotis in the Circuit Court of the Sixteenth Judicial Circuit, Kane County, Illinois for injunctive relief for zoning violations (Count I) and to foreclose on the liens it had entered against the Property (Count II), Case No. 2011 CH 448. (ROA Dkt. 13-2) at 37–38. In the foreclosure action (as well as in the later described Adversary Complaint and in this appeal), Heotis contests the validity of the liens and claims that the City— not he—failed to comply with the terms of the Special Use Ordinance. *See, e.g.*, (ROA Dkt. 13-6) at 27–28; (Dkt. 8-1) at 14–16; (Dkt. 25) at 8–9. On August 23, 2011, the state court granted the City's motion for default judgment for Count I and entered a permanent injunction enjoining Heotis' illegal use of the Property. (ROA Dkt. 13-2) at 38. After many years of discovery, on April 27, 2016, the City filed a motion for summary judgment on Count II; the state court set a briefing schedule on the motion and scheduled a hearing for September 1, 2016. (ROA Dkt. 13-2) at 38–39. Heotis' counsel withdrew after the City filed its motion for summary judgment and Heotis did not file a response brief in accordance with the court's schedule. Instead, on August 31, 2016, the day before the state-court hearing, Heotis filed for Chapter 13 bankruptcy ("Petition," No. 16 B 28071). (ROA Dkt. 13-2) at 9–30.

---

[2] Although Heotis claims that the City had applied for a federal grant to assist with cleanup costs and then represented to Heotis in a conversation that the grant funds would cover those costs, Heotis asserts that the City inexplicably did not use those funds in its cleanup efforts. *See* (Dkt. 25) at 9.

## C.    The Bankruptcy Proceedings

After being notified of Heotis's Petition, the City immediately moved for relief from the Automatic Stay on September 9, 2016.  (ROA Dkt. 13-2) at 37–45.  Shortly thereafter, on September 15, 2016, Heotis filed an Adversary Proceeding (No. 16 A 000567) requesting that the Bankruptcy Court determine the validity of the City's liens on the Property under Federal Rule of Bankruptcy Rule of Procedure 7001(2).  The Adversary Complaint alleged that the liens are invalid because they (1) are unsupported by documentation and (2) were imposed in breach of the Special Use Ordinance and the City's agreement with Heotis that federal funds would cover the cleanup costs.  (ROA Dkt. 13-6) at 25–29.  On September 29, 2016, Heotis filed a Chapter 13 Plan and associated schedules.  On November 10, 2016, the City moved to dismiss the Adversary Complaint on four grounds:  failure to state a claim, lack of jurisdiction, mandatory abstention, and permissive abstention.  (ROA Dkt. 13-6) at 43–50 & (ROA Dkt. 13-7) at 1-2; *see also* (ROA Dkt. 13-7) at 6–27.

On January 6, 2017, the parties came before the Bankruptcy Court for a hearing on the City's two pending motions.  First, the Bankruptcy Court granted the motion to dismiss the Adversary Complaint on permissive-abstention grounds (*see* 28 U.S.C. § 1334(c)(1)) in order to allow the foreclosure litigation to proceed.  (ROA Dkt. 13-7) at 28; *see* (Dkt. 34-1).  In addressing the City's arguments, the Bankruptcy Court held that, under 28 U.S.C. § 157(b)(2)(K), it both had jurisdiction over the matter and was not *required* to abstain because the adversary proceeding sought to determine the validity of certain liens was a core proceeding under that statute.  (Dkt. 34-1) at A6–A8.  When it came to permissive abstention, however, the Bankruptcy Court "flexibly applied" the twelve factors laid out in *In re Hearthside Baking Co., Inc.*, 391 B.R. 807 (Bankr. N.D. Ill. 2008) and *In re Chicago, Milwaukee, St. Paul & Pacific R.R.*

*Co.*, 6 F.3d 1184 (7th Cir. 1993) ("*In re Chicago, Milwaukee R.R.*"); determined that nine of the twelve factors weighed in favor of abstention; and therefore exercised its discretion to permissively abstain from hearing the adversary proceeding. (Dkt. 34-1) at A10–A16. The court declined to consider the City's 12(b)(6) argument. *Id*. at A16. The Bankruptcy Court also partially granted the City's motion for relief from the Automatic Stay. On this issue, the Bankruptcy Court looked to the three-factors set forth in *In re Fernstrom Storage and Van Co.*, 938 F.2d 731 (7th Cir. 1991), and found that all three factors, plus the interest of judicial efficiency, constituted cause to lift the automatic stay. (Dkt. 34-1) at A16–18. Accordingly, the Bankruptcy Court allowed the underlying foreclosure action to proceed on limited grounds: "through entry of a Judgment of Foreclosure and Sale, if proven, with no judicial sale to occur without further order of court." (Dkt. 1) at 6; (ROA Dkt. 13-6) at 19.

On February 1, 2017, Heotis filed three notices of appeal—one in the main bankruptcy case, No. 16 B 28071, appealing the order and corrected order granting in part and continuing in part the City's motion for relief from the automatic stay (*see* (Dkt. 1)), and two in the adversary proceeding, No. 16 A 00567, both appealing the same order granting in part and denying in part the City's motion to dismiss the Adversary Complaint. *See* (Dkts. 8-1, 8-2). In one of the appeals of the Bankruptcy Court's order dismissing the Adversary Complaint, Heotis filed a motion for leave to appeal (*see* (Dkt. 8-1) at 12–25), which primarily argues the merits of the appeal, but also advocates for a holistic resolution of all contested orders in the event that the order on permissive abstention is not independently final and immediately appealable. The City objected to this motion in this Court. *See* (Dkt. 6). The three appeals originally were assigned to three separate district court judges, and they were consolidated before this Court on Heotis's motion. *See* (Dkt. 8), (Dkt. 14).

Also on February 1, 2017, Heotis filed a motion to stay the enforcement of the Bankruptcy Court's order lifting the Automatic Stay pending appeal of the bankruptcy case. The motion was briefed expeditiously, and on February 16, 2017, the Bankruptcy Court denied the motion. *See* (Dkt. 10) at 3. The next day, Heotis moved this Court for stay pending appeal (Dkt. 10), which the Court denied. (Dkt. 40). The state case therefore continued, and, after the state court denied the City's motion for summary judgment (*see* (Dkt. 25) at 14), the case was set for trial on July 24, 2017. (Dkt. 34) at 7. Filings in the underlying Chapter 13 matter indicate that, instead of proceeding to trial as scheduled, the parties have been working towards settlement of the issues regarding the Property, and that on March 23, 2018, the Bankruptcy Court entered an order approving a settlement between Heotis and the City. (No. 16 B 28071, Dkt. 115). The settlement is not yet complete, however, and this appeal therefore remains ripe for decision.

On appeal, Heotis raises the following two issues:

1. Whether the Bankruptcy Court erred in permissibly abstaining from hearing Heotis's Adversary Complaint to determine the nature and extent of the City's alleged lien;

2. Whether the Automatic Stay, pursuant to 11 U.S.C. § 362, should not have been lifted and the Court should have determined the nature and extent of the City's lien pursuant to Federal Rule of Bankruptcy Procedure 7001(2) in order to allow Heotis to pay off any valid lien to the City through his Chapter 13 plan.

*See* (Dkt. 25) at 6.[3]

---

[3] In his Amended Designation of the Record on Appeal (filed before his opening brief), Heotis frames the issues for appeal as follows: (1) "In the Adversary Case (16 A 567), whether the Court erred in permissibly abstaining pursuant to 28 USC § 1334(c)(2) by incorrectly using and assessing the twelve factors stated by the Court in its ruling (pursuant to [*In re Hearthside Baking Co., Inc.*], 391 B.R. 817 (Bankr. N.D. Ill. 2008))"; (2) "In the Bankruptcy Case (16 B 28071), whether the lifting of the Automatic Stay (pursuant to 11 USC § 362) was appropriate based or permissibly abstaining"; (3) "In the Bankruptcy Case (16 B 28071), whether the modification of the Automatic Stay was appropriate when "cause" as defined under 11 USC § 362(d)(1) did not exist (pursuant to [*In re Fernstrom Storage and Van Co.*], 938 F.2d 731 (7th Cir. 1991))." *See* (Dkt. 13) at 1.

**DISCUSSION**

**I.      Heotis's Motion for Leave to Appeal**

Heotis curiously moves for leave to appeal in connection with only one of the three notices of appeal—the second notice of appeal filed with regard to the January 18, 2017 order granting in part and denying in part the City's motion to dismiss the Adversary Complaint. In so doing, Heotis uses the better part of ten pages of his fourteen-page motion to dispute the validity of the City's liens on his property and the merits of his appeals. *See* (Dkt. 8-1) at 12–21. It is not until the bottom of the tenth page that Heotis gets to the heart of the matter—his argument in favor of the appealability of the order. In particular, Heotis argues that the order granting the motion to lift the stay is final and immediately appealable and that the order granting the motion to dismiss on permissive abstention grounds should be considered final as well, and even if it is not, it should be considered to be inseparable from the order lifting the stay. (Dkt. 8-1) at 21–24. The City responds to Heotis's motion in kind, spending the majority of its response litigating the merits of the appeal. When it finally addresses the real issue, the City highlights the lack of support for Heotis's arguments, but it likewise fails to support its own arguments with anything other than argument and its sentiments about the impurity of Heotis's overall motives in this litigation. (Dkt. 6) at 7–9. For his part, Heotis continues his argument about the appealability of the underlying orders in his opening brief. *See* (Dkt. 25) at 4–6.

Despite the parties' unfocused arguments, the Court is satisfied that the orders appealed here are properly appealable. This Court has "jurisdiction to hear appeals from . . . final judgments, orders, and decrees." 28 U.S.C. § 158(a)(1). As already stated in its order on Heotis's motion to stay, an order to permissively abstain is treated as a final order and is therefore appealable. *See In re Rusty Jones, Inc.*, 124 B.R. 774, 779 (Bankr. N.D. Ill. 1991)

("Authority in this District properly holds that the discretionary abstention provision, unlike the mandatory abstention provision, allows the Bankruptcy Court to render a final decision to abstain."); *accord In re Res. Tech. Corp.*, 2004 WL 419918, at \*1 (N.D. Ill. Feb. 13, 2004); *In re Ascher*, 128 B.R. 639, 645 (Bankr. N.D. Ill. 1991). Even if this were not the case, jurisdiction over the discretionary abstention order would be proper under the collateral order doctrine (28 U.S.C. § 1291, as applied through 28 U.S.C. § 158(a)), because the Bankruptcy Court's decision to abstain was entered with the expectation that the state court is in the best position to resolve the long running dispute between the parties regarding the enforceability of the liens—the only issue presented in the Adversary Complaint. The abstention order deferring to parallel state court proceedings did not leave an "essential part of the federal suit in federal court" and thus "amounts to a dismissal of the suit." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 10 (1983).

Likewise, an order lifting the automatic stay is a final order immediately appealable as a right. *In re Doctors Hosp. of Hyde Park, Inc.*, 337 F.3d 951, 954 (7th Cir. 2003) ("The district court's order granting the state's motion to lift the automatic stay was final and therefore appealable to us."); *Colon v. Option One Mortg. Corp.*, 319 F.3d 912, 916, n.1 (7th Cir. 2003) ("All courts that have considered the matter agree that an order lifting the automatic stay is a final judgment . . . . We see no reason to disagree with the other circuits."); *In re Boomgarden*, 780 F.2d 657, 659–60 (7th Cir. 1985) ("We believe that the bankruptcy court's lifting of the automatic stay here . . . is a final order."); *accord Hijjawi v. Five N. Wabash Condo. Ass'n*, 495 B.R. 839, 843 (N.D. Ill. 2013).

The City has not argued grounds for departure from either of these general rules, and the Court does not find any independent need to do so.

**II.     The Bankruptcy Court's Order Abstaining from the Adversary Proceeding**

Turning then, to the merits of the appeal, the Bankruptcy Court permissively abstained from hearing Heotis's Adversary Complaint.  Permissive abstention, which is governed by 28 U.S.C. § 1334(c)(1), allows bankruptcy courts to abstain from hearing a particular proceeding in the interest of justice, in the interest in comity with state courts, or due to concerns regarding respect for state law.  *See In re Hearthside Baking Co.*, 391 B.R. at 818; *see also In re Meier*, 2014 WL 4084544, at *3 (Bankr. N.D. Ill. Aug. 8, 2014) (even if abstention is not mandated by § 1334(c)(2), the court may still abstain in "the interest of justice, or in the interest of comity with State courts or respect for State law") (quoting 28 U.S.C. § 1334(c)(1)).  The party seeking permissive abstention has the burden of proving by a preponderance of the evidence that abstention is appropriate.  *Brizzolara v. Fisher Pen Co.*, 158 B.R. 761, 769 (Bankr. N.D. Ill. 1993) (citation omitted).  The twelve factors considered by the Bankruptcy Court were:

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the bankruptcy court's] docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

*In re Chicago, Milwaukee R.R.*, 6 F.3d at 1189 (quoting *In re Eastport Assoc.*, 935 F.2d 1071, 1075–76 (9th Cir. 1991)).  "No one factor is particularly determinative in a decision to abstain, as each factor's degree of relevance and importance is dependent on the circumstances of each case."  *In re Repurchase Corp.*, 329 B.R. 832, 836 (Bankr. N.D. Ill. 2005) (citing *In re Chicago, Milwaukee R.R.*, 6 F.3d at 1189).

The Bankruptcy Court found that factors 1–5, and 7–10, weighed in favor of abstention, noting that 4 and 9 weighed "heavily" in favor of abstention. It found that factor 6 weighed *against* abstention, and factors 11 and 12 were neutral. (Dkt. 34-1) at A11–A15. Heotis concedes that factors 2, 5, and 8 weigh in favor of abstention by omitting any challenge to these factors in his briefing, and he agrees that factors 11 and 12 are neutral. However, in favor of a reversal of the Bankruptcy Court's ruling he argues, without substantive support or legal citations, that the remaining factors (1, 3, 4, 6, 7, 9, and 10) all weigh against abstention. (Dkt. 25) at 17; *see also* (Dkt. 8-2) at 19–20.

This Court reviews the Bankruptcy Court's decision to permissively abstain from hearing the Adversary Complaint under an abuse-of-discretion standard and considers the Bankruptcy Court's application of the twelve factors flexibly. *In re Chicago, Milwaukee R.R.*, 6 F.3d 1184 at 118889; *In re Matter of U.S. Brass Corp.*, 110 F.3d 1261, 1268 (7th Cir. 1997). Abuse of discretion occurs when the court's decision "is premised on an incorrect legal principle or a clearly erroneous factual finding, or when the record contains no evidence on which the court rationally could have relied." *In re Kmart Corp.*, 381 F.3d 709, 713 (7th Cir. 2004). Despite this deferential standard, the Court "must nonetheless conduct a 'meaningful review'" of the bankruptcy judge's decision. *In re Chicago, Milwaukee R.R.*, 6 F.3d 1184 at 1189 (citation omitted). "[F]ederal courts generally should exercise their jurisdiction if properly conferred and that abstention is the exception rather than the rule." *Id*. (citation omitted).

Here, Heotis has not shown that the Bankruptcy Court abused its discretion in abstaining from hearing the Adversary Complaint. First, he admits that three of the factors weigh in favor of the abstention. *See* (Dkt. 25) at 17 ("Heotis therefore believes that only three [factors] weigh in favor of abstention . . . ."). Those factors, which include the extent to which state law

predominates and the feasibility of severing the state law claims, were significant in the Bankruptcy Court's determination and weigh heavily in favor of abstention. *See In re Chicago, Milwaukee R.R.*, 6 F.3d 1184 at 1189 ("[B]ecause § 1334(c)(1) is concerned with comity and respect for state law, whether a case involves unsettled issues of state law is always significant.")*; cf. In re L & S Indus., Inc.*, 989 F.2d 929, 935 (7th Cir. 1993) ("Under bankruptcy law the presence of a state law issue is not enough to warrant permissive abstention, but it nevertheless is a significant consideration."). In addition, Heotis agrees that the 11th and 12th factors are neutral, and of course, he does not dispute the finding that factor 6 weighs against abstention. In attacking the Bankruptcy Court's alleged errors as to the remainder of the factors, Heotis's argument is conclusory, speculative, and devoid of any citation to authority— precedential or otherwise. *E.g.*, (Dkt. 25) at 17 (as to factor 4, "Heotis does not dispute that a foreclosure exists only that it is not the right proceeding to resolve the issues in the adversary proceeding."); *id.* (as to factor 10, "Heotis believes the Court is incorrect that he if [sic] forum shopping. The reason for the case filing was to reorganize his finances to allow all creditors to be paid."). His undeveloped arguments do nothing more than disagree with the Bankruptcy Court's ruling. As such, they fail to demonstrate that the Bankruptcy Court's decision to abstain from the Adversary Proceeding constituted any sort of error. *See In re Kmart Corp.*, 381 F.3d at 713; *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 131 F.3d 625, 628 (7th Cir. 1997) ("A decision constitutes an abuse of discretion when it is 'not just clearly incorrect, but downright unreasonable.'") (citation omitted).

Even if Heotis had substantively addressed the Bankruptcy Court's evaluation of the remaining factors, the record does not support his claim that the court abused its discretion. As the Court has already explained, the application of abstention would assist the efficient

administration of the estate, seeing that the foreclosure litigation has been ongoing for more than seven years and is poised for trial (barring settlement) and the Adversary Proceeding seeks to relitigate those same claims (factor 1). *See, e.g.*, *In re Res. Tech. Corp.*, 2004 WL 419918, at *3 (bankruptcy judge did not abuse his discretion by finding that state-court litigation progress was not insubstantial and weighed in favor of allowing the state court to finish its work). Further, Heotis himself agrees with the Bankruptcy Court's conclusion that Chapter 13 plan payments can still be made while the state court foreclosure proceeding is ongoing, but he simply argues that a sale of the property through the plan "would be a more effective efficient matter." (Dkt. 25) at 17. The Bankruptcy Court did not abuse its discretion in finding that factor 1 weighs in favor of abstention.

As to the nature of the applicable law (factor 3) and the substance of the Adversary Proceeding (factor 7), the dispute identified in the Adversary Complaint unquestionably involves state law and City ordinance claims, and therefore these factors weigh in favor of abstention because the state court is in the best position to resolve these issues. *Cf. In re Williams*, 144 F.3d 544, 550 (7th Cir. 1998) (affirming decision to permit relief from automatic stay to allow state court to make forcible entry determination because it was a "narrow area of state law," when Debtor filed bankruptcy petition three days before summary judgment hearing and forcing Bankruptcy Court to make that determination would "not be a particularly efficient use of judicial resources"). Still, Heotis contends—without support—that the Bankruptcy Court is the right forum to resolve these issues. Again, this argument alone is insufficient to demonstrate reversible error. Next, the Court agrees with the Bankruptcy Court that the fourth factor strongly weighs in favor of abstention: the related proceeding, which involves the same issues found in Heotis's Adversary Complaint, has been pending for seven years and has made substantial

progress towards resolution. On this point, the Bankruptcy Court correctly noted that allowing the same issues to be relitigated from the start in the Adversary Proceeding would not only risk inconsistent results, it would be an exercise in judicial inefficiency. (Dkt. 34-1) at A12–A13.

Finally, the Court will not disturb the Bankruptcy Court's conclusion regarding the burden on its own docket (factor 9) and its finding that abstention would promote judicial efficiency and economy in avoiding the replication of discovery that has already been completed in state court. *See CIGNA HealthCare of St. Louis, Inc. v. Kaiser*, 294 F.3d 849, 852–53 (7th Cir. 2002) (the "decision to abstain" from addressing parallel proceedings is "close[ly] relat[ed]" to "normal docket control" or "judicial economy"); *see also Landis v. North American Co.*, 299 U.S. 248, 254–55 (1936) ("The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants."). And regarding forum shopping (factor 10), although Heotis is adamant that he was not forum shopping, his pleadings clearly express a preference for the bankruptcy forum. "[I]f the party opposing abstention filed for bankruptcy to obtain a preferred forum, abstention may be appropriate." *In re Res. Tech. Corp.*, 2004 WL 419918, at *6; *see also In re Chicago, Milwaukee R.R.*, 6 F.3d at 1193–94. So the Bankruptcy Court did not err in finding that this factor also weighs in favor of abstention. Even a finding that Heotis was not forum shopping would only make this factor neutral; it would not weigh against abstention.

In sum, although federal courts have a responsibility to exercise jurisdiction when they have it, the Court cannot say that the Bankruptcy Court abused its discretion by determining that abstention would promote the efficient administration of Heotis's estate and that the state court could handle the lien-validity claims more expeditiously.

## III.    The Bankruptcy Court's Order Lifting the Automatic Stay

Heotis also challenges the Bankruptcy Court's decision to grant partial relief from the Automatic Stay, determining that the foreclosure matter could proceed to a judgment but that a sale could not proceed without approval of the court.   The filing of a bankruptcy petition operates as a stay of "the commencement or continuation . . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement" of the bankruptcy case.   11 U.S.C. § 362(a)(1).   This "Automatic Stay" provision is "designed to protect debtors from all collection efforts while they attempt to regain their financial footing."   *Kimbrell v. Brown*, 651 F.3d 752, 755 (7th Cir. 2011) (citation and quotations omitted).   However, the Automatic Stay is not sacrosanct.   Section 362(d) of the Bankruptcy Code provides that on "motion of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . such as by terminating, annulling, modifying, or conditioning such stay . . . for cause . . . ."   Courts consider whether (1) any great prejudice to either the bankruptcy estate or the debtor will result from continuation of the civil suit, (2) the hardship to the non-debtor party by maintenance of the stay considerably outweighs the hardship of the debtor, and (3) the creditor has a probability of prevailing on the merits.   *See In re Fernstrom Storage and Van Co.*, 938 F.2d at 735.   The Bankruptcy Court's ruling on this issue is reviewed for abuse of discretion.   *Boomgarden*, 780 F.2d at 660 ("Because 11 U.S.C. § 362(d) commits the decision of whether to lift the stay to the discretion of the bankruptcy judge, his decision may be overturned only upon a showing of abuse of discretion.").

Here, the Bankruptcy Court applied the three-factor test and found that all three factors weighed in the City's favor.   (Dkt. 34) at A16–A18.   The Bankruptcy Court also found that considerations of judicial efficiency weighed in favor of granting relief from the Automatic Stay.

*Id.* On appeal, Heotis's argument that the Bankruptcy Court erred is circular and keeps coming back to his desire to have the Bankruptcy Court decide the validity, nature, and extent of the liens instead of having those same issues adjudicated in the now nearly complete state court proceeding. In other words, just as in his motion to stay pending appeal, his arguments are difficult to follow. As best the Court can tell, he first argues that both he and the bankruptcy estate will be prejudiced because he "needs the Court to rule on his Adversary Complaint," he does not want another court to make a determination of these same issues (particularly where it appears that court is poised to do so), and he believes that his lack of counsel at the time the bankruptcy proceeding was filed and during the summary judgment briefing in state court somehow influences this factor. (Dkt. 25) at 12–13. Regarding hardship, Heotis conclusorily states (repeatedly) that the City will not suffer any harm if the stay is reinstated (*id.* at 13), although he does admit that allowing the bankruptcy matter to proceed instead of the foreclosure action would cause the City to incur additional costs and will delay any recovery. (Dkt. 39) at 10. As with his argument on abstention, Heotis fails to cite any authority or to make a compelling argument for reversal, and the Court therefore sees no reason to disturb the Bankruptcy Court's holding as to the first two factors of the *Fernstrom* test.

As to the last factor, the creditor's probability of prevailing on the merits, Heotis rightly highlights the fact that the City's motion for summary judgment was denied, thereby putting the state court case in a different procedural posture than that considered by the Bankruptcy Court. Even so, Heotis does not convincingly argue that that the City will *not* prevail—he only argues that "there is no proof that the [City] would prevail on the merits." (Dkt. 25) at 14. That may be so, but the inverse is also true: there is also no proof that Heotis will prevail on the merits at this time. At best, this factor is now neutral, as either party could prevail at trial. Last, the

Bankruptcy Court again correctly emphasized that judicial efficiency can constitute cause to lift the Automatic Stay, and that the lengthy parallel foreclosure proceeding and the efforts already expended in that case again supported lifting the stay. All in all, even in light of the new information about the state court proceedings, the Bankruptcy Court did not abuse its discretion in analyzing the *Fernstrom* factors and partially lifting the Automatic Stay.

As a final point here, Heotis argues "two significant additional reasons why the foreclosure proceeding should be stayed": he believes he has claims against the City for (1) tortious interference with his business, and (2) its refusal to "fulfill its statutory, fiduciary obligations to mitigate damages." (Dkt. 25) at 14. Even so, Heotis does not explain how the application or lifting of the Automatic Stay affects these potential claims, and he does not say that he somehow intends to assert them in his bankruptcy proceedings. These potential claims do nothing to demonstrate that the Bankruptcy Court abused its discretion in granting the City's motion for relief from the stay through a judgment on the foreclosure case. *In re Kmart Corp.*, 381 F.3d at 713.

## CONCLUSION

For the reasons stated above, challenged orders of the Bankruptcy Court are **AFFIRMED**.

_____
Hon. Virginia M. Kendall
United States District Judge

Date: March 29, 2018